2007 UT App 260

Thomas W. TOLMAN and Verla F. Tolman, Plaintiffs and Appellants,

v.

LOGAN CITY, and John and Jane Does 1–20, Defendants and Appellees.

No. 20060713–CA.

Court of Appeals of Utah.

July 27, 2007.

490 

Christopher L. Daines and David R. Daines, Logan, for Appellants.

Jody K. Burnett, Salt Lake City, for Appellees.

Before BENCH, P.J., McHUGH, and THORNE, JJ.

## OPINION

BENCH, Presiding Judge:

¶ 1 Plaintiffs Thomas W. and Verla F. Tolman (the Tolmans) appeal from a grant of summary judgment in favor of Defendant Logan City (the City), which resulted in the dismissal of the Tolmans' complaint. The trial court did not err in dismissing either of the Tolmans' takings claims, as their claim based on the 1989 enactment of a zoning ordinance was barred by the statute of limitations and their claim based on the 2004 denial of their rezoning application failed as a matter of law. The trial court also correctly determined that the City's denial of the Tolmans' rezoning application did not result in arbitrary and capricious "reverse spot zoning" or a violation of their substantive due process rights because the denial was based on the requirements contained in the City's general plan. Accordingly, we affirm.

## BACKGROUND

¶ 2 In 1983, the Tolmans purchased a home at 525 East Fourth North Street in Logan, Utah. At the time of their purchase, the home was a single-family residence situated within a multi-family zone. In 1989, at the request of some of the Tolmans' neighbors, the City downzoned the neighborhood, thereby changing the zone from multi-family residential to single-family residential. In 1995, the City's municipal council adopted a revised general plan for the City, and in 1996 it adopted a zoning map and land development ordinance consistent with the revised general plan. According to the revised general plan, zoning map, and land development ordinance, the Tolmans' neighborhood continued to be zoned as single-family residential.

¶ 3 In 2002, the Tolmans purchased another home and attempted to sell their first home. Their first home had a mortgage of $115,000 and had an appraised value of $130,000. The Tolmans received at least two offers on their home in the summer of 2002: one for $70,000 and another for $100,000. The Tolmans did not accept either offer. They attempted to rent their home, but were unsatisfied with the results. The Tolmans claim that they cannot receive adequate rent due to the zoning restriction limiting the number of unrelated people that may live in a single-family residence to three.

¶ 4 In 2004, the Tolmans submitted an application to rezone their property and numerous surrounding properties from single-family residential to multi-family residential. The City's planning commission recommended that the application be denied because the rezoning request was contrary to the general plan. Ultimately, the City's municipal council denied the Tolmans' application based on the planning commission's recommendation.

¶ 5 The Tolmans then brought suit in district court challenging the City's decision and alleging that the denial of their 2004 rezoning application was arbitrary and capricious, a denial of due process, and a regulatory taking. They also alleged that the enactment of the 1989 ordinance that downzoned their property constituted a regulatory taking.

¶ 6 In response, the City brought a motion for summary judgment, arguing that the Tolmans' claims were either barred by the statute of limitations or failed as a matter of law. The trial court granted the City's motion, concluding that: (1) the Tolmans' takings claim based on the enactment of the downzoning ordinance in 1989 was barred by the applicable statute of limitation; (2) the takings claim based on the 2004 denial of the rezoning application failed as a matter of law

because the Tolmans had not demonstrated that they had been deprived of all economically viable use of their property; (3) the Tolmans' due process claim failed as they had not demonstrated the denial of any procedural rights and had not established that the City's decision resulted in arbitrary reverse spot zoning in violation of their substantive due process rights; and (4) the City's denial of the Tolmans' rezoning application was not arbitrary or capricious because it was based on the requirements of the City's general plan. In light of these conclusions, the trial court granted the City's motion for summary judgment and dismissed the Tolmans' complaint.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "When reviewing whether the trial court properly granted summary judgment, we accord the trial court's legal conclusions no deference and review those conclusions for correctness." *Blackner v. State*, 2002 UT 44, ¶ 8, 48 P.3d 949. Under this correctness standard, we "view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *R.A. McKell Excavating, Inc. v. Wells Fargo Bank, N.A.*, 2004 UT 48, ¶ 7, 100 P.3d 1159 (quotations and citations omitted).

## ANALYSIS

### I. Takings Claims

¶ 8 In their Second Amended Complaint, the Tolmans allege that two land use decisions by the City resulted in a regulatory taking: (1) the enactment of the 1989 zoning ordinance that downzoned their property from multi-family to single-family residential; and (2) the denial of their 2004 application to rezone their property to multi-family residential. " '[A] regulatory taking transpires when some significant restriction is placed upon an owner's use of his property for which "justice and fairness" require that compensation be given.' " *View Condo. Own-*

*ers Ass'n v. MSICO L.L.C.*, 2005 UT 91, ¶ 31, 127 P.3d 697 (quoting *Philip Morris, Inc. v. Reilly*, 312 F.3d 24, 33 (1st Cir.2002)). Stated more simply, a regulatory taking occurs when a zoning regulation goes " 'too far.' " *Arnell v. Salt Lake County Bd. of Adjustment*, 2005 UT App 165, ¶ 17, 112 P.3d 1214 (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922)).

¶ 9 A party can challenge a land use decision as a taking through either a facial challenge or an "as applied" challenge. *Id.* at ¶ 18 n. 9. A facial challenge to a land use regulation becomes ripe upon enactment of the regulation itself. *See Smith Inv. Co. v. Sandy City*, 958 P.2d 245, 251 (Utah Ct. App.1998) (noting that the only question involved in a facial challenge to a land use regulation is " 'whether the mere enactment of the [ordinance] constitutes [a substantive due process violation or] a taking' " (alterations in original) (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 493, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987))). However, an as applied challenge does not become ripe until the challenging party has exhausted its administrative remedies and received a final decision from the relevant administrative agency. *See Arnell*, 2005 UT App 165 at ¶¶ 18 n. 9, 19, 112 P.3d 1214.

### A. Taking Due to Enactment of 1989 Ordinance

¶ 10 The Tolmans' takings claim based on the City's 1989 ordinance is a facial challenge that became ripe upon the enactment of the ordinance and is now barred by the statute of limitations. "[W]hether the statute of limitations has run is a legal conclusion to be reviewed for correctness." *State v. Lusk*, 2001 UT 102, ¶ 11, 37 P.3d 1103. The catch-all four-year statute of limitations contained in Utah Code section 78-12-25(3) applies to actions not governed by other statutes of limitation. *See* Utah Code Ann. § 78-12-25(3) (2002). This four-year statute of limitations has been specifically applied to a takings claim. *See Johnson v. Utah–Idaho Cent. Ry. Co.*, 68 Utah 309, 249 P. 1036, 1041 (1926). In recent years, a new

statute, which likely has retroactive application,[1] would reduce the statute of limitations period for bringing a facial challenge to a zoning ordinance to just thirty days following the enactment. *See* Utah Code Ann. § 10–9a–801(5) (Supp.2006). As the Tolmans' challenge to the 1989 ordinance came fifteen years after the ordinance's enactment, it is barred as a matter of law.

## B. Taking Due to 2004 Denial of Rezoning Application

¶ 11 The Tolmans' takings claim based on the denial of their rezoning application in 2004 is an as applied challenge that is not time barred, but nonetheless fails as a matter of law. In order "for there to be a taking under a zoning ordinance, the landowner must show that he has been deprived of all reasonable [or economically viable] uses of his land." *Cornish Town v. Koller*, 817 P.2d 305, 312 (Utah 1991); *see also National Parks & Conservation Ass'n v. Board of State Lands*, 869 P.2d 909, 925 (Utah 1993) ("The state ... need compensate a landowner only if the regulation deprives him or her of all economically viable use of the land...."); *Arnell*, 2005 UT App 165 at ¶ 17, 112 P.3d 1214 (explaining that a total regulatory taking " 'denies all economically beneficial or productive use of land' " (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001))). This court has previously clarified that the term "economically viable use" does not mean "highest and best use." *Smith Inv. Co.*, 958 P.2d at 258 n. 19. Furthermore, a "mere diminution in property value is insufficient to meet the burden of demonstrating a taking by regulation." *Koller*, 817 P.2d at 312. In fact, this court has previously held that no taking occurred where a parcel's value diminished by forty-three percent due to a downzoning regulation imposed after a landowners' purchase of the parcel. *See Smith Inv. Co.*, 958 P.2d at 258–59.

¶ 12 The Tolmans have not lost any value in their property as a result of the City's denial of their rezoning application. Given that their property was a single-family residence both before and after the denial, the value of their property did not diminish due to the City's decision. And, by the Tolmans' own admission, their property has not lost all economically viable use. In Mr. Tolman's affidavit, he stated that they had attempted to sell their home as a single-family residence and had received two offers to purchase their home, including one offer of $100,000. When a property retains this sort of worth, it "can hardly be deemed valueless, with no viable economic use." *Id.* at 259.

¶ 13 Even if their property's alleged diminution in value were to be measured by what the Tolmans stood to gain in the event the City granted the rezoning application, the Tolmans' claim fails. The Tolmans did not provide evidence that would allow a comparison between their property's value as a multi-family residence and as a single-family residence. In this respect, they fail to meet their burden of proof regarding the extent of diminution in value their property suffered due to the denial of their rezoning application. The Tolmans' takings claim based on the denial of their rezoning application therefore fails as a matter of law.

## II. Spot Zoning/Substantive Due Process Claims

¶ 14 When reviewing municipal decisions regarding land use, "[t]he courts shall: (a) presume that land use decisions and regulations are valid; and (b) determine only whether or not the decision is arbitrary, capricious, or illegal." Utah Code Ann. § 10–9–1001(3) (2002) (current version at Utah Code Ann. § 10–9a801 (3)(a) (Supp. 2006)). In fact, "because a 'zoning classification reflects a legislative policy decision,' we will not interfere with that decision 'except in the most extreme cases.' " *Bradley v. Payson City Corp.*, 2003 UT 16, ¶ 24, 70 P.3d 47 (quoting *Harmon City, Inc. v. Draper City*,

---

1. "[A] statute may be applied retroactively if it affects only procedural and not substantive rights." *See Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 667 (Utah Ct.App. 1990). "Statutes of limitation are essentially procedural in nature and .... do not abolish a substantive right to sue ...." *Lee v. Gaufin*, 867 P.2d 572, 575 (Utah 1993); *see also State v. Lusk*, 2001 UT 102, ¶ 28, 37 P.3d 1103.

2000 UT App 31, ¶ 18, 997 P.2d 321). "The guiding principle behind our interpretation of legislative zoning decisions is that we will not substitute our judgment for that of the municipality." *Id.* "The wisdom of the zoning plan, its necessity, [and] the nature and boundaries of the district to be zoned are matters which lie solely within [the] discretion [of the municipality]." *Crestview–Holladay Homeowners Ass'n, Inc. v. Engh Floral Co.*, 545 P.2d 1150, 1152 (Utah 1976). "Though a municipality may have a myriad of competing choices before it, 'the selection of one method of solving the problem in preference to another is entirely within the discretion of the [municipality]; and does not, in and of itself evidence an abuse of discretion.'" *Bradley*, 2003 UT 16 at ¶ 24, 70 P.3d 47 (quoting *Phi Kappa Iota Fraternity v. Salt Lake City*, 116 Utah 536, 212 P.2d 177, 181 (1949)). Thus, a municipality's zoning decision is not arbitrary or capricious if it is "reasonably debatable." *Marshall v. Salt Lake City*, 105 Utah 111, 141 P.2d 704, 709 (1943).

## A. Spot Zoning

¶ 15 The Tolmans claim that the City's denial of their rezoning application resulted in arbitrary and capricious "reverse spot zoning." [2] Although Utah courts have not used the term "reverse spot zoning," we do acknowledge the concept. Under Utah's jurisprudence, spot zoning occurs when a municipality either grants a special privilege or imposes a restriction on a particular small property that is not otherwise granted or imposed on surrounding properties in the larger area. *See id.* at 711 (explaining that spot zoning occurs "where a particular small tract, within a large district" is zoned differently than the larger district, and "not done in pursuance of any general or comprehensive plan"). Thus, "[s]pot zoning results in the creation of [these] two types of 'islands.'" *Crestview–Holladay*, 545 P.2d at 1151.

¶ 16 However, spot zoning has not occurred where there are a number of properties in the larger surrounding area holding the same privileges or restrictions as the property subject to a municipality's land use decision. For example, the Utah Supreme Court concluded that a municipality did not engage in spot zoning when it granted an application to rezone a parcel from residential to commercial where "[i]n the area surrounding the subject property there [we]re a number of commercial enterprises." *Id.* In another case, the Utah Supreme Court concluded that no spot zoning had occurred where a municipality refused to grant an application to rezone a particular parcel from residential to commercial use given that many of the blocks around the applicant's lot were also zoned exclusively for residential purposes, notwithstanding the fact that many of the parcels in adjoining blocks were zoned commercial. *See Dowse v. Salt Lake City Corp.*, 123 Utah 107, 255 P.2d 723, 724 (1953). Consistent with that approach, other courts have spoken of spot zoning as "singling out *one* particular parcel for different and less favorable treatment." *Penn Cent. Transp. Co. v. New York*, 42 N.Y.2d 324, 397 N.Y.S.2d 914, 366 N.E.2d 1271, 1275 (1977), (emphasis added) *aff'd*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

¶ 17 Even when viewed in the light most favorable to the Tolmans, the factual scenario they present does not fit the definition of spot zoning. The Tolmans do not present a scenario of a single-family residence island in a sea of multi-family residences. Rather, the evidence presented by the Tolmans shows a checkerboard neighborhood with a mix of single-family and multi-family residences. Although multi-family residences make up a majority of the homes in the Tolmans' neighborhood, the Tolmans' property is not the only parcel upon which the single-family residence restriction is placed. In fact, on the Tolmans' street, Fourth North Street between 500 and 600 East, there are six single-family residences

---

**2.** In their appellate brief, the Tolmans repeatedly interjected argumentative commentary via bracketed insertions in quoted material. Our rules require that "[a]ll briefs ... must be ... free from burdensome, irrelevant, immaterial or scandalous matter." Utah R.App. P. 24(k). As such commentary is irrelevant and burdensome, parties should resist the temptation to present their argument in such a manner.

mixed with the twelve multi-family residences. Under these factual circumstances, we cannot say that the City's denial of a rezoning application resulted in spot zoning of any type.

## B. Substantive Due Process

¶ 18 The Tolmans also claim that the denial of their 2004 rezoning application was an arbitrary and capricious act that denied them their substantive due process rights. A municipality's land use restriction does not violate the substantive component of the due process clause unless it lacks a reasonable relation to public health, safety, or general welfare. *See Smith Inv. Co. v. Sandy City*, 958 P.2d 245, 252 (Utah Ct.App. 1998) ("Generally, 'a zoning ordinance ... must be reasonably related to serving the public health, safety or general welfare. If a land use restriction is unreasonable or irrational, it may be found to violate the substantive component of the due process clause.'" (quoting 1 Kenneth H. Young, *Anderson's American Law of Zoning* § 3A.04 (4th ed.1996))). "However, if an ordinance 'could promote the general welfare; or even if it is reasonably debatable that it is in the interest of the general welfare' we will uphold it." *Id.* (quoting *Marshall*, 141 P.2d at 709). More specifically, a municipality's land use decision is reasonably debatable, and not otherwise arbitrary or capricious, where it is made to effectuate an objective set out in the municipality's general plan. *See Crestview–Holladay*, 545 P.2d at 1152 ("We are of the opinion that [the municipality] acted within the scope of its legislative powers, and that the reclassification ordinance was adopted pursuant to a planning scheme developed for that portion of the county we are here concerned with."); *Marshall*, 141 P.2d at 711 ("Being set up on such a definite and comprehensive plan it cannot be said to be arbitrary or discriminatory."). Further, "even when land value is substantially diminished as a result of zoning, that fact alone will not be deemed a sufficient ground for finding [a] regulation arbitrary and capricious." *Smith Inv. Co.*, 958 P.2d at 255 (quotations and citation omitted).

¶ 19 The City did not act arbitrarily or capriciously by denying the Tolmans' application for rezoning. The City made this decision to effectuate the objective set forth in its general plan, which was to preserve the single-family character of the neighborhood and to stop the proliferation of multi-family residences. The City created this objective in response to concerns voiced by residents of the neighborhood. Although it appears that the City may be currently reconsidering that original objective and may revise its objective in the future, the City's decision to deny the Tolmans' application based on the general plan was reasonably related to the promotion of the general welfare and satisfies the reasonably debatable standard for such land use decisions.

## CONCLUSION

¶ 20 The trial court did not err in granting the City's motion for summary judgment and dismissing the Tolmans' complaint. The takings claim based on the enactment of the 1989 ordinance was barred by the statute of limitations and the takings claim based on the 2004 denial of the rezoning application failed as a matter of law. The City's decision did not create a spot zone of the Tolmans' property, nor did it violate their substantive due process rights. Given its conformity with the City's general plan, the City's decision was not arbitrary or capricious.

¶ 21 We therefore affirm.

¶ 22 WE CONCUR: CAROLYN B. McHUGH and WILLIAM A. THORNE JR., Judges.