2010 UT 69

Nadine GILLMOR, individually and as trustee of the Nadine Fausett Gillmor Trust; Evergreen Development; Milton O. Bitner Company; Ella M. Pace; Dwayne M. Pace, trustee of the Dwayne M. Pace revocable trust; Joan J. Pace, trustee of the Joan J. Pace revocable trust; Gale W. Pace; Kathleen D. Pace; and Anderson Development, LC, Plaintiffs and Appellants,

v.

SUMMIT COUNTY, a political subdivision of the State of Utah; Summit County Board of Adjustment, a quasi-judicial body; Summit County Attorney; and John Does 1–20, Defendants and Appellees.

No. 20070266.

Supreme Court of Utah.

Dec. 28, 2010.

Bruce R. Baird, Salt Lake City, for plaintiffs.

Jody K. Burnett, Robert C. Keller, Steven W. Allred, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 This case comes to us on direct appeal from the district court and involves a land use dispute between appellant, Nadine Gillmor, and appellee, Summit County (the "County"). We are asked to determine whether the district court erred in granting summary judgment in favor of the County on the ground that all of Gillmor's claims are time barred. Additionally, we must decide whether a plaintiff seeking review of a land use decision under section 801(2)(a) of the Utah County Land Use Development and Management Act ("CLUDMA") is permitted to challenge the facial validity of a zoning ordinance upon which the county's decision is based, or rather whether such challenges must be brought within thirty days of the enactment of the applicable ordinance.

¶ 2 First, we hold that Gillmor's claims are not time barred because section 801(2)(a) of CLUDMA entitles petitioners to district court review of *any* county land use decision that adversely affects their interests so long as the decision is made in the exercise or violation of the provisions of CLUDMA and a petition for review is filed within thirty days of the county's decision. Since Gillmor has complied with these requirements, we conclude that her claims are timely and entitled to judicial review.

¶ 3 Second, we hold that once petitioners have satisfied the jurisdictional requirements of section 801(2)(a) of CLUDMA, they may

assert any and all claims related to the alleged arbitrary, capricious, or illegal nature of a county's land use decision—including facial challenges to the zoning ordinance upon which the decision was based. Accordingly, we conclude that Gillmor was entitled to challenge the County's zoning ordinances in her Petition for Review. Based on these conclusions, we reverse the district court's grant of summary judgment in favor of the County and remand this case for further proceedings.

## BACKGROUND

¶ 4 Because this case comes to us on summary judgment, we construe the facts in a light most favorable to Gillmor, the nonmoving party. CLUDMA grants counties power to "enact all ordinances, resolutions, and rules and [to] enter into other forms of land use controls and development agreements that they consider necessary or appropriate for the use and development of land within ... the[ir] county."[1] In 1995, acting pursuant to this authority, the County established the Synderville Basin Planning District by ordinance. Following a 1997 amendment to CLUDMA, the Synderville Basin Planning District was converted into a "township."

¶ 5 In November 1997, the Synderville Basin Planning Commission proposed a general plan (the "1997 Plan") to the Synderville Township concerning zoning ordinances and subdivision regulations in the area. After a lengthy public process, the 1997 Plan was approved by the Summit County Board of County Commissioners (the "BCC"). Several months later, in March 1998, the BCC adopted the Synderville Basin Development Code (the "1998 Code"), which provides various ordinances relating to the development of property throughout the area.

¶ 6 Gillmor is the owner of over 300 acres of real property in the Synderville Basin Area. She also owns approximately 208 acres in the same area in her capacity as trustee of the Nadine Fausett Gillmor Trust. In 1998, Gillmor filed a lawsuit against the County challenging the adoption of the 1997 Plan and 1998 Code. In her complaint, Gillmor ar-

gued that the County's development ordinances violated constitutional guarantees of due process and equal protection. Additionally, she requested a declaratory judgment that the ordinances were "void ab initio." One year after commencement of the suit, it was voluntarily dismissed without prejudice.

¶ 7 In early 2004, after several attempts to sell her property to potential developers failed due to zoning restrictions, Gillmor submitted an application to the County (the "Amendment Application") requesting that the text of the 1998 Code be amended and that the requested changes be applied to her property. After public hearings, the BCC voted to deny the Amendment Application on the basis that it did not meet the criteria set forth in the 1998 Code.

¶ 8 Pursuant to section 801(2)(a) of CLUDMA, Gillmor petitioned the district court for review of the BCC's denial of her Amendment Application. The parties concede that Gillmor's Petition for Review was filed within thirty days of the BCC's final decision. In her petition, Gillmor raised twenty-one separate claims. Twenty of those claims—claims one through nineteen and twenty-one—contended that the County's 1997 Plan and 1998 Code violated CLUDMA and both the Utah and United States Constitutions. Based on these alleged violations, Gillmor's petition argued that the 1997 Plan and 1998 Code were "void ab initio" and unenforceable. Additionally, in her twentieth claim, Gillmor argued that "the County's denial of [her] zoning application was arbitrary, capricious and/or illegal."

¶ 9 Five months after filing her petition for review, Gillmor submitted a plat application to the County (the "Plat Application"). In her Plat Application, Gillmor argued that the 1997 Plan and 1998 Code were unconstitutional and invalid. Specifically, Gillmor contended that the County's zoning ordinances: (1) were "so vague, defective, undefined, discriminatory, and overreaching" as to violate Gillmor's "state and federal [constitutional] rights" and (2) violated CLUDMA based on several procedural deficiencies, such as the alleged failure to include a valid zoning map.

1. Utah Code Ann. § 17–27a–102(1)(b) (2009).

Based on these alleged flaws, Gillmor's application contended that her request could not be processed under the requirements set forth in the 1997 Plan and 1998 Code. Instead, Gillmor asserted that the County was required to accept the changes requested in her Plat Application because the request complied with other relevant provisions of state law.

¶ 10 On November 4, 2004—one day after Gillmor submitted her Plat Application to the County—the Summit County Director of Community Development returned the application to Gillmor with a letter denying her request (the "Denial Letter"). The Denial Letter notified Gillmor that she would have to follow the requirements set forth in the 1997 Plan and 1998 Code to obtain any right to develop her property at the densities requested in her Plat Application. The Denial Letter also informed Gillmor of the proper means of filing a valid plat application under the 1997 Plan and stated that the densities she requested could not be approved without complying with the plan's requirements. These requirements include submitting a "Sketch Plan" and an application for a Specially Planned Area Zone.

¶ 11 After receiving the Denial Letter, Gillmor appealed the County's decision to not review her application to both the Board of Adjustment (the "BOA") and the BCC. At public hearings regarding Gillmor's appeal, the BOA addressed the question of "whether the community development director correctly applied the existing code" in rejecting and returning Gillmor's applications without processing them. But at the suggestion of the County Attorney, the BOA "did not consider the claims relating to the illegality of the General Plan and Development Code." Following the hearings, the BOA affirmed the Director of Community Development's decision to reject the Plat Application. After receiving notice of the BOA's decision, Gillmor amended her initial Petition for Review to include claims relating to the denial of her Plat Application.

¶ 12 Shortly after Gillmor filed her Petition for Review, the County filed a motion for summary judgment arguing that (1) Gillmor's claims were barred by the relevant statute of limitations and laches, (2) the BOA had legislative discretion to deny Gillmor's applications, and (3) the County's land use ordinances as applied to Gillmor's applications were legal. The district court granted the County's motion. In support of its decision, the court concluded that (1) Gillmor's claims were time barred and (2) Gillmor's challenge of the County's decision to deny her applications was not entitled to judicial review because her applications did not comply with the County's land use ordinances. In arriving at these conclusions, the district court noted that although there were many facts in dispute, most of the facts were not material in that "they d[id] not govern the [*sole* ] issue to be resolved," which was whether the petition was "timely."[2] Based on this narrow scope, the district court determined that the *only* facts material to the issue before it were that the challenged ordinance was adopted no later than March 9, 1998, and that Gillmor filed her claims in 2004.

¶ 13 Turning to the applicable statute of limitations, the court surmised that "[h]owever characterized or labeled, [Gillmor's] claims are not really an appeal from a land use decision as applied to [her], but are [instead] a claim that the ordinances are facially invalid." Because the court believed that Gillmor's "applications for development were nothing more ... than a challenge to the ordinance scheme," it also concluded that the *only* land use decision at issue was the County's decision to enact the 1997 Plan and 1998 Code. After concluding that Gillmor's claims were nothing more than a "facial attack" on the County's ordinances, the district court held that her claims were time barred either by CLUDMA's thirty-day statute of limita-

---

**2.** Throughout its order, the district court emphasized this narrow scope, noting that "given the nature of this motion, which defendants accurately characterize as a 'rifle shot,' most of the facts are not material in that they do not govern the issue to be resolved—is this *complaint/peti-* *tion timely?* " (Emphasis added.) Similarly, the court also stated that it was "ruling *only* on the time frames for seeking judicial review and the general limitations statutes preclude any recovery under this complaint." (Emphasis added.)

tions or the catch-all four-year statute of limitations contained in the Utah Code.

¶ 14 On appeal, Gillmor contends that the district court erred in granting summary judgment by improperly concluding that her claims were time barred. Specifically, Gillmor argues that her initial complaint raises an "as applied" challenge to several land use decisions made by the County and that because these claims were timely filed, they are entitled to judicial review. Alternatively, Gillmor argues that even if her claims are considered "facial" challenges, they are not time barred because the zoning ordinances are "void ab initio," and because application of the ordinances constitutes a "continuing violation."

¶ 15 By contrast, the County contends that Gillmor's claims are all time barred and that the BOA's and BCC's decisions to deny her applications were not arbitrary, capricious, or illegal. Additionally, the County argues that even if Gillmor's Petition for Review is timely, her claims relating to the facial validity of the 1997 Plan and 1998 Code cannot be considered because CLUDMA requires that they be asserted within thirty days of the enactment of the ordinances. We have jurisdiction pursuant to Utah Code section 78A–3–102(2)(j).

## STANDARD OF REVIEW

¶ 16 "We review a district court's decision to grant summary judgment for correctness, granting no deference to the district court's conclusions . . . ." [3] Similarly, application of a statute of limitations to bar an action presents a question of law that we review for correctness.[4]

## ANALYSIS

¶ 17 Although the facts and legal issues raised before the trial court in this case are numerous and complex, the narrow issue before us on appeal is whether the trial court properly granted summary judgment on the

ground that all of Gillmor's claims are time barred. We first hold that Gillmor's claims are not time barred because they were properly raised in a petition for review under section 801(2)(a) of CLUDMA.[5] Additionally, we hold that despite the fact that Gillmor's substantive claims can be fairly characterized as "facial challenges" to the County's zoning ordinances, she may still assert these claims in the instant action. Once a petitioner has satisfied the jurisdictional requirements of section 801(2)(a), she may assert *any and all* claims related to the alleged arbitrary, capricious, or illegal nature of a county land use decision—*including* facial challenges to the zoning ordinance upon which the decision is based. Because we conclude that Gillmor's claims are timely, we do not address her arguments regarding the continuing violation doctrine or the ability to challenge an ordinance that is "void ab initio" after expiration of a statute of limitations. Additionally, because the district court granted summary judgment based *solely* on the timeliness of Gillmor's claims, we do not address whether the County's decisions to deny Gillmor's applications were in fact arbitrary, capricious, or illegal or whether the 1997 Plan and 1998 Code violate provisions of CLUDMA or the Utah or United States Constitutions. We instead hold that summary judgment was inappropriate.

## I. BECAUSE GILLMOR COMPLIED WITH THE APPLICABLE STATUTE OF LIMITATIONS, SECTION 801(2)(a) OF CLUDMA, HER CLAIMS ARE TIMELY AND ENTITLED TO JUDICIAL REVIEW

¶ 18 Based on the plain language of the applicable statute of limitations contained in section 801(2)(a) of CLUDMA, we conclude that Gillmor's claims are timely and entitled to judicial review. Section 801(2)(a) expressly grants parties the right to seek judicial review of county land use decisions in district

---

**3.** *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 16, 215 P.3d 933.

**4.** *See State v. Lusk*, 2001 UT 102, ¶ 11, 37 P.3d 1103.

**5.** Utah Code Ann. § 17–27a–801(2)(a) (2009).

court.[6] Specifically, that section provides that "[a]ny person adversely affected by a final *decision* made in the exercise of or in violation of the provisions of [CLUDMA] may file a petition for review of the decision with the district court within 30 days after the local land use decision is final."[7] Based on CLUDMA's plain language, a party is affirmatively entitled to judicial review of *any* final county land use decision whenever (A) the decision adversely affects the party's interests, (B) the decision was made in the exercise of or in violation of provisions of CLUDMA, and (C) the party files a petition for review within thirty days of the date the county's decision is final.

¶ 19 In 2004, Gillmor filed her Petition for Review in response to the County's decisions to deny her Amendment and Plat Applications. Because Gillmor sought review of these decisions in a petition for review pursuant to section 801(2)(a), the procedural requirements of that section govern this action.[8] As explained below, in the instant case each of section 801(2)(a)'s jurisdictional requirements is satisfied and Gillmor's claims are therefore entitled to judicial review.

### A. The County's Decisions to Deny Gillmor's Applications Adversely Affected Gillmor's Interests

■ ¶ 20 The County rendered land use decisions that adversely affected Gillmor's interests when it rejected Gillmor's Amendment and Plat Applications. Before the right to district court review under section 801(2)(a) may be invoked, a county must render a final land use decision that adversely affects the interests of the party seeking review.[9] In the instant case, the County rendered land use decisions that adversely affected Gillmor's interests when it rejected Gillmor's applications. In each of her appli-

cations, Gillmor made requests to develop her property in ways that would have been financially beneficial to her. Although it may have been within the County's discretion to deny these applications, by doing so the County adversely affected Gillmor's ability to develop or potentially sell her property. Because these decisions adversely affected Gillmor, and because section 801(2)(a) expressly states that it is applicable to any "final decision" adversely affecting any party, we conclude that the County's decisions constitute reviewable land use decisions under section 801(2)(a).

¶ 21 The County contends that its decisions to deny Gillmor's applications were *not* reviewable land use decisions because Gillmor's applications did not comply with the requirements of the 1997 Plan and 1998 Code. Following this reasoning, the district court concluded that "[h]owever characterized or labeled, [Gillmor's] claims are not really an appeal from a land use decision" because her applications did not comply with the requirements of the 1997 Plan and 1998 Code. We find these arguments unpersuasive. There is certainly no dispute concerning whether or not Gillmor's applications complied with the requirements of the 1997 Plan and 1998 Code. Indeed, Gillmor concedes that her applications were noncompliant. But the noncompliance of Gillmor's applications does not determine whether the decisions to deny those applications constitute reviewable land use decisions. This is because the noncompliance of Gillmor's applications does not render the County's rejections "nondecisions" and does not shield these rejections from judicial review. Instead, the noncompliance of Gillmor's applications relates solely to the question of whether the County's decisions were arbitrary, capricious, or illegal—the exact question a district

---

6. *See* Utah Code Ann. § 17–27a–801(2)(a) (2009). At the time this case was initiated, section 801(2)(a) was codified in Utah Code section 17–27–1001. Because there has been no substantive changes to the statute, throughout this opinion, we cite to the most recent codification of CLUDMA.

7. *Id.* (emphasis added).

8. Because we conclude that the procedural requirements of section 801(2)(a) govern this action, we need not address the County's contention that Gillmor's claims are barred by the Utah Code's catch-all four-year statute of limitations. *See* Utah Code Ann. § 78B–2–307(3) (2008).

9. *See id.* § 17–27a–801(2)(a) (2009).

court will consider on review.[10] Whether or not the applications complied with the requirements of the 1997 Plan or 1998 Code, the County's decisions to deny Gillmor's requests adversely affected her interests. Because this is what section 801(2)(a) requires to entitle a petitioner to district court review, we hold that the County's decisions qualify as reviewable land use decisions under section 801(2)(a).

### B. The County's Decisions to Deny Gillmor's Applications Were Made in the Exercise of Provisions of CLUDMA

¶ 22 The County's decisions to deny Gillmor's applications were made in the exercise of provisions of CLUDMA. To be subject to district court review under section 801(2)(a), a county's land use decision must be made "in the exercise of or in violation of the provisions of [CLUDMA]."[11] CLUDMA provides counties with the authority to enact zoning ordinances,[12] enforce those ordinances in the review of land use applications,[13] and to establish appeal authorities to "hear and decide ... requests for variances from the terms of ... land use ordinances and ... appeals from decisions applying th[ose] land use ordinances."[14]

¶ 23 The County's decisions to deny Gillmor's applications were made in the exercise of these provisions. Specifically, in addition to applying the 1997 Plan and 1998 Code to Gillmor's applications—as authorized by CLUDMA—the County also exercised the appellate authority provided by section 701 of CLUDMA when it reviewed the denials of Gillmor's applications in hearings before the BCC and BOA. Because these denials and reviews specifically exercised authority granted by CLUDMA, we conclude that Gillmor's petition seeks review of County land use decisions made in the exercise of provisions of CLUDMA.

### C. Gillmor Filed Her Petition for Review Within Thirty Days of the County's Final Decisions

¶ 24 It is undisputed that Gillmor complied with the timeliness requirement set forth in section 801(2)(a). To receive district court review under section 801(2)(a), a party must file a petition for review within thirty days of the date on which a county renders its final land use decision.[15] It is undisputed that Gillmor filed her Petition for Review within thirty days of the date the County rendered its final decisions to deny her applications. Indeed, in its brief, the County agrees that "[t]o the extent Gillmor's complaints could be considered bonafide petitions for review ... [they] were timely filed." Based on this concession, we conclude that Gillmor's petition satisfied section 801(2)(a)'s thirty-day timing requirement.

¶ 25 Because Gillmor's Petition for Review satisfies the three requirements set forth in section 801(2)(a), we hold that her claims are not time barred and are entitled to judicial review.

### II. BECAUSE GILLMOR IS PROPERLY BEFORE THE DISTRICT COURT, SHE IS NOT BARRED FROM ASSERTING FACIAL CHALLENGES TO THE 1997 PLAN AND 1998 CODE

¶ 26 Having concluded that Gillmor's petition was timely and entitled to judicial review, we now address whether she is barred from asserting facial challenges to the 1997 Plan and 1998 Code. With respect to this question, the County contends that the statute of limitations for facial challenges to a zoning ordinance begins to run *not* when a particular plaintiff is injured by application or enforcement of the ordinance, but rather on the date the ordinance is enacted. Based on this position, the County argues that any facial challenges to the 1997 Plan and 1998

10. *See id.* § 17–27a–801(3)(a)(ii) (stating that county land use decisions, ordinances, or regulations shall be reviewed by the district court to "determine only whether or not the decision, ordinance, or regulation is arbitrary, capricious, or illegal").

11. *Id.* § 17–27a–801(2)(a).

12. *See id.* § 17–27a–102(1)(b) (2009).

13. *See, e.g., id.* § 17–27a–302(1)(e) (2009).

14. *Id.* § 17–27a–701(1) (2009).

15. *Id.* § 17–27a–801(2)(a).

Code must have been brought within thirty days of their *enactment*, and that after thirty days the 1997 Plan and 1998 Code became completely immune from facial challenge. Accordingly, the County contends that even if Gillmor's petition is entitled to review, "[s]uch a review c[an] not consider claims [that] the 1997 Plan and 1998 Code were facially invalid . . . because those claims were no longer judicially cognizable." We disagree with the County's position and conclude that once petitioners have satisfied the jurisdictional requirements of section 801(2)(a) and are properly before the district court, they may raise *any and all* claims relating to the alleged arbitrary, capricious, or illegal nature of a county land use decision that adversely affects their interests—including facial challenges to the ordinance or regulation upon which the county's decision is based.

¶ 27 As we have previously explained, a statute or zoning ordinance "may be unconstitutional either on its face or as applied to the facts of a given case." [16] In an as-applied challenge, a party concedes that the challenged statute may be facially constitutional, but argues that under the particular facts of the party's case, "the statute was applied . . . in an unconstitutional manner." [17] By contrast, "in asserting a facial challenge, [a] party avers that the statute is so constitutionally flawed that no set of circumstances exists under which the [statute] would be valid." [18]

¶ 28 Although the facial/as-applied distinction may be procedurally significant in some contexts, this distinction generally "has nothing to do with the accrual or ripeness of a cause of action" for statute of limitations purposes. [19] Instead, the accrual date of a facial or as-applied challenge is identical to the accrual date of other substantive claims—the date upon which the plaintiff's injury occurred and the cause of action became complete. [20] Thus, as long as a party satisfies CLUDMA's jurisdictional prerequisites to be in court—including bringing her claim within thirty days of the date she was injured—she may challenge a law's validity "whether she chooses to argue that the law is facially unconstitutional or only unconstitutional as applied in her case." [21]

¶ 29 Importantly, nothing in CLUDMA purports to bar a party from asserting facial challenges in a petition for review. In fact, the only substantive limitation CLUDMA places on the scope of a district court's review is that the court shall "determine only whether or not the decision, ordinance, or regulation [at issue] is arbitrary, capricious, or illegal." [22] Section 801(3)(d) of CLUDMA explains that a decision, ordinance, or regulation is illegal when it "violates a law, statute, or ordinance in effect at the time the decision was made." [23] Clearly, a decision made pursuant to an unconstitutional ordinance falls within this definition of illegality. Accordingly, it is entirely appropriate for a petitioner to assert a facial challenge to the constitutionality of a zoning ordinance in an appeal to

---

16. *State v. Gallegos*, 2009 UT 42, ¶ 14, 220 P.3d 136 (quoting *State v. Herrera*, 993 P.2d 854, 857 n. 2 (Utah 1999); *see also Herrera*, 993 P.2d at 857 n. 2 ("A facial challenge is the most difficult because it requires the challenger to establish that no set of circumstances exists under which the [statute] would be valid. An as-applied challenge, on the other hand, succeeds if the challenger shows that the statute was applied to him or her in an unconstitutional manner.") (alteration in original) (internal quotation marks omitted)).

17. *See Gallegos*, 2009 UT 42, ¶ 14, 220 P.3d 136 (alteration in original) (internal quotation marks omitted).

18. *Id.* (second alteration in original) (internal quotation marks omitted).

19. *See* Timothy Sandefur, *The Timing of Facial Challenges*, 43 Akron L.Rev. 51, 52 (2010).

20. *See, e.g., Colosimo v. Roman Catholic Bishop*, 2007 UT 25, ¶ 14, 156 P.3d 806.

21. Sandefur, *supra* note 21, at 52; *see also* Richard H. Fallon, Jr., Commentary *As–Applied Challenges and Facial Challenges and Third–Party Standing*, 113 Harv. L.Rev. 1321, 1324 (2000) ("[T]here is no single distinctive category of facial, as opposed to as-applied, litigation. Rather, all challenges to statutes arise when a particular litigant claims that a statute cannot be enforced against her.").

22. Utah Code Ann. § 17–27a–801(3)(a)(ii) (2009).

23. *Id.* § 17–27a–801(3)(d).

a land use decision in an effort to demonstrate that the decision was illegal because it was based on a facially unconstitutional ordinance.

¶ 30 This is precisely what Gillmor has done in her Petition for Review. Despite her argument that her petition raises an "as-applied" challenge, nearly all of her claims directly challenge the facial validity of the 1997 Plan and 1998 Code. Indeed, with the exception of her single claim relating to the alleged arbitrary, capricious, and illegal nature of the County's decisions to deny her applications, nothing in Gillmor's petition alleges that there was something uniquely unconstitutional about the way in which the ordinances were applied to her particular applications. We therefore agree with the County that Gillmor's Petition for Review raises facial challenges to the validity of the 1997 Plan and 1998 Code.[24] But as previously explained, the characterization of Gillmor's claims as facial challenges has no impact on our determination of whether Gillmor's claims are timely. Instead, because Gillmor brought her Petition for Review in a timely manner after the County's decisions to deny her applications, she is permitted to raise a facial attack on the 1997 Plan and 1998 Code's validity in order to demonstrate that the County's decisions made pursuant to those ordinances were illegal.

¶ 31 The County's reply brief opposes this conclusion by relying on the Utah Court of Appeals' statement in *Tolman v. Logan City* that "[a] facial challenge to a land use regulation becomes ripe upon the enactment of the regulation itself."[25] But the rule articulated in *Tolman* is *not* applicable to any and all kinds of facial challenges.[26] Instead, as commentators and courts in other jurisdictions have recognized, this *limited* rule was meant to apply *only* to facial challenges to regulatory takings where injury to the plaintiff is said to occur at the moment the ordinance is enacted and the plaintiff's property value is "taken."[27]

¶ 32 Importantly, however, unlike in a facial challenge to a regulatory taking, in this case Gillmor does not complain of injury sustained *solely* from the enactment of the 1997 Plan and 1998 Code. Instead, Gillmor complains of injury arising out of, and seeks relief from, the County's decision to apply the requirements of the 1997 Plan and 1998 Code to her Amendment and Plat Applications and its decisions to deny the applications based on those requirements. Because Gillmor's petition complains of injury arising out of the application of the ordinance to her, rather than the mere enactment of the ordinances in the first instance, the rule articulated in *Tolman* does not apply to her claims.

24. For a discussion of the distinction between facial and as-applied challenges, see *supra* ¶ 28.

25. 2007 UT App 260, ¶ 9, 167 P.3d 489.

26. *See, e.g., Lowenberg v. City of Dallas,* 168 S.W.3d 800, 800–02 (Tex.2005) (per curiam); Sandefur, *supra* note 21, at 53–77 ("A common misconception holds that a facial challenge to the constitutionality of a law must be brought within a certain period after the enactment of that law. This is incorrect. Any challenge to a law's constitutionality must be brought within the limitations period after the plaintiff is injured by the law, [whatever] form that injury might take. Only very rarely will the injury occur through the mere enactment of [a] law.").

27. *See Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 688 (9th Cir.1993) ("[T]he differences between a statute that effects a taking and a statute that inflicts some other kind of harm ... [is that] [i]n other contexts, the harm inflicted by the statute is continuing or does not occur until the statute is enforced—in other words, until it is applied. In the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is passed. Thus, it is not inconsistent to say that different rules adhere in the facial takings context and other contexts."); *Lowenberg,* 168 S.W.3d at 800–02 (concluding the rule that "the statute of limitations begins to run upon the passage of [a] statute" applies only in the regulatory takings context); Sandefur, *supra* note 21, at 58, 61 ("[C]ourts have occasionally erred by holding that a facial challenge to the constitutionality of a law is time-barred because the case was filed too long after the enactment of a law—in other words, that the cause of action in a facial challenge accrues when the challenged law was adopted. This is incorrect. ... The origin of [this] misapprehension ... lies in confusion between two different types of constitutional claims: 1) cases involving facial challenges to the validity of a law and 2) cases involving facial regulatory takings claims. The two are quite distinct.").

¶ 33 Moreover, even if the *Tolman* rule were not limited to the facial regulatory takings context, we believe that the broad position advocated by the County would tend to produce an illogical, unjust, and potentially unconstitutional result. For instance, if an unconstitutional zoning ordinance could not be challenged by a property owner in an action to prevent its enforcement within thirty days of its application, but instead could be challenged only within thirty days of its enactment, a property owner subjected to some constitutional violation would be without remedy unless the owner had the foresight to challenge the ordinance when it was enacted, possibly years or even decades before it was applied to her property and before she ever had standing to assert her claims.[28] Furthermore, as past cases have demonstrated, a facially unconstitutional statute or ordinance may linger on the books of a jurisdiction for many years before ever causing injury to a particular plaintiff.[29] But this does not render the statute or ordinance immune from facial challenge because "[t]here is simply no categorical rule that a law becomes insulated from facial challenge by the mere passage of time." [30] Instead, a law may be facially attacked whenever it causes injury to a particular plaintiff as long as the plaintiff asserts her challenge in a timely manner. For example, as one scholar has thoughtfully explained,

> Imagine ... a community in which all the citizens are white and in which an ordinance forbids black persons from voting. That ordinance would be facially unconstitutional, even though it would not affect any of the residents. But years later, when a black person moves into that community and discovers that the law forbids him from voting, he has suffered an injury, his cause of action accrues, and he may seek redress by challenging the facial constitutionality of the law.[31]

Similarly, once an allegedly unconstitutional zoning ordinance is applied to a land owner to prevent her from using or developing her property in a beneficial way, she has suffered an injury, her cause of action accrues, and she may seek redress by bringing a timely challenge to the application of the ordinance to her in a district court action under section 801(2)(a).

¶ 34 In adopting this position, we fully recognize that the Legislature intended CLUDMA to provide for "expeditious and orderly development of a community." [32] We also recognize that in some instances this purpose may be undermined by permitting landowners to assert facial challenges to zoning ordinances years after enactment of the relevant ordinance. Notwithstanding this conflict, however, we do not think the Legislature intended to provide for "expeditious and orderly development of a community" at the expense of a fair and reasonable opportunity to challenge an allegedly invalid ordinance when it is enforced against one's property. We therefore construe section 801(2)(a) precisely as it was written by the Legislature. And we conclude that once petitioners have satisfied the jurisdictional requirements of section 801(2)(a), they may raise any and all claims relating to the alleged arbitrary, capricious, or illegal nature of a county's decision that adversely affects their interests—including facial challenges to

---

**28.** *See Travis v. Cnty. of Santa Cruz,* 33 Cal.4th 757, 16 Cal.Rptr.3d 404, 94 P.3d 538, 544 (2004) (rejecting a similar argument and offering similar analysis).

**29.** *See, e.g., Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).

**30.** Sandefur, *supra* note 21, at 61 ("[L]awsuits over constitutional issues, including facial challenges, should *not* be barred merely by the passage of time after the enactment of the challenged law." (emphasis added)); *See also Lawrence,* 539 U.S. at 558–79, 123 S.Ct. 2472 (permitting a plaintiff to bring a facial challenge in 1998 to a statute enacted in 1973 because the plaintiff's injury occurred when he was arrested pursuant to the statute); *Travis,* 16 Cal.Rptr.3d 404, 94 P.3d at 544 (rejecting the argument that a plaintiff's claims were time barred and concluding that because the plaintiff "brought his action in a timely way after application of the Ordinance to him," the plaintiff could "raise in that action a facial attack on the Ordinance's validity").

**31.** Sandefur, *supra* note 21, at 62.

**32.** *Foutz v. City of S. Jordan,* 2004 UT 75, ¶ 16, 100 P.3d 1171 (internal quotation marks omitted).

**112**

the ordinance or regulation upon which the county's decision is based.

¶ 35 Based on our conclusion that Gillmor's Petition for Review was timely filed in response to the County's decisions to deny her applications, we hold that she was entitled to assert facial challenges to the constitutionality of the 1997 Plan and 1998 Code in her petition in an effort to demonstrate that the County's decisions were illegal because they were based on a facially unconstitutional zoning ordinance.

### CONCLUSION

¶ 36 We hold that Gillmor's Petition for Review satisfies the requirements set forth in section 801(2)(a) of CLUDMA and that the substantive claims asserted in her petition are timely and entitled to judicial review. We also hold that once petitioners have satisfied the jurisdictional requirements of section 801(2)(a) and are properly before the district court, they may raise any and all claims relating to the alleged arbitrary, capricious, or illegal nature of a county decision adversely affecting their interests—including facial challenges to the ordinance or regulation upon which the county's decision is based. We therefore reverse the district court's grant of summary judgment and remand this case for further proceedings consistent with this opinion.

¶ 37 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Justice LEE concur in Associate Chief Justice DURRANT's opinion.